## Gillespie Estate

*David B. Buerger, John G. Buchanan, Jr.,* and *Smith, Buchanan & Ingersoll,* for petitioners.

Cox, J., March 10, 1949.—A petition has been presented to this court by the executors of the will of testatrix alleging that all of the estate taxes assessed by the Federal Government on the estate of this decedent have been paid, and requesting this court to prorate the same in accordance with the Act of July 2, 1937, P. L. 2762, 20 PS §844. It appears, however, that a controversy exists between the executors of decedent's estate and the Collector of Internal Revenue as to the proper basis on which the tax is to be assessed, the collector having assessed a deficiency. As a result of this controversy, the amount of the ultimate tax to be paid, if assessed on the basis of the contention of the Collector of Internal Revenue, will be greater than if the

tax is assessed on the basis or formula assumed by the executors to be the correct one. The assertion, therefore, that all the taxes have been paid, is only correct if the Collector of Internal Revenue and the executors finally agree on the same formula for assessing the tax, and this formula is the formula proposed by the executors. If, on the other hand, the executors are incorrect and the tax is assessed on the basis of the formula advocated by the Federal Government a greater amount of tax will be owing than the payments made by the executors provide for. This controversy arises from a difference in the construction placed on the will of decedent by the Collector of Internal Revenue from that given to the will by the executors of the estate of decedent.

The Collector of Internal Revenue asserts testatrix intended that all the taxes for estate purposes are to be paid out of the estate and that the residue for the purpose of establishing the amount of the bequests of the residue is the net amount which remains after the payment of all costs of administration and taxes have been deducted from the gross estate, together with the payment of specific and pecuniary legacies. The executors, however, contend that decedent intended that the residuary estate would be the amount remaining after the deduction of administrative expenses, the devises and bequests in articles 1 and 2 of the will, and the payment of taxes on the devises and bequests made in articles 1 and 2. They further contend that after these deductions are made from the gross estate the amount remaining is the net residuary estate of decedent which is to be distributed according to the provisions contained in decedent's will. Payment of the taxes on each part of the residuary estate is to be made out of the proportion of the residuary estate bequeathed to the respective legatees of the residuary estate prior to distribution.

The matter of validity of the assessment of Federal estate taxes is one that does not lie within the jurisdiction of this court, and is one over which we have no direct or indirect control. If the will is construed by the Federal Government and the tax is assessed on the basis of its construction, the only recourse of the executors, if they believe the will is improperly construed, is in the Federal appellate courts. This court, however, does have the duty imposed on it of construing decedent's will, in order to make distribution in accordance with its provisions. This will poses no difficult problem of construction. Its terms are plain and unambiguous and, we believe, point out the precise intent of the testatrix.

Testatrix by article I, sec. 1, of her will devised all her real estate to her daughter, Mabel Lindsay Gillespie, who is one of the executors, and by section 2 bequeathed to her all her tangible personal property.

By article II, sec. 1, testatrix created a trust with the Union Trust Company of Pittsburgh, now Mellon National Bank and Trust Company, consisting of two funds of $50,000 each, the income of which was to be paid certain named persons for life and on their deaths to their issue. By section 2 of this article she made cash bequests to certain named persons in the total amount of $240,000, and by section 3 gave each servant in her employment at the time of her death and previously thereto for at least a year $100 for each year of such employment.

By article III, testatrix declined to exercise the power she might have had by her will to dispose of any portion of the estate of her daughter, Mabel Lindsay Gillespie.

By article IV of her will, testatrix disposed of all the residue of her estate, section 1 giving three eighths thereof outright to her daughter, Mabel Lindsay Gillespie; section 2 giving three eighths to her trustees, to

collect the income thereof and make distributions to her daughter each year of either $36,000 or a sum equal to two and one-half percent of the value of the property at testatrix's death, whichever should be larger, payments to be made twice a year or more frequently in the trustee's discretion, the trustees to pay any excess net income over the amounts payable to her daughter to the legatees as provided in section 3 of article IV. Testatrix gave her daughter a general power of appointment to dispose of the corpus as she saw fit, and provided if she failed to exercise the power or, exercising it, if any portion were not so disposed of then the property constituting this three eighths of the residue of her estate, or so much as had not been disposed of by her daughter, should be disposed of as part of testatrix's residuary estate under the provisions of section 3 of article IV. By a codicil to her will testatrix amended article IV, sec. 2 thereof, by providing that the income of the three eighths of the trust should be paid to her daughter semi-annually, eliminating the provision for payment of any excess income to charities, and in all other respects confirming her said will. On July 18, 1944, Mabel Lindsay Gillespie, the life beneficiary with power of appointment under the provisions of article IV, sec. 2, executed an irrevocable disclaimer of the power, with the result that on her death the corpus of this three eighths of the residue will be distributed to the charities named in article IV, sec. 3. By section 3 of article IV testatrix directed the remaining one fourth of her residuary estate should be divided into 100 parts, which she devised and bequeathed among a large number of charities with direction as to how they should apply the income.

Article IX of testatrix's will provides in part as follows:

"I direct that all estate, inheritance and transfer taxes now or hereafter imposed in respect to the de-

vises and bequests made by Articles One and Two of this will shall be paid out of the residue of my estate devised and bequeathed by Article Four, so that the beneficiaries mentioned in the said Articles One and Two shall receive their devises and bequests without diminution."

What is the residuary estate of decedent under the terms of the will which we have briefly outlined? In our mind, there can be no question the residuary estate of decedent will consist of her gross estate, less the costs of administration, debts, the amounts of the devises and bequests contained in articles I and II of the will, and all estate, inheritance, and transfer taxes imposed in respect to the devises and bequests made by articles I and II of the will. The taxes to be paid on any bequests contained in article IV, the residuary section of testatrix's will, are not deductible from her gross estate for the purpose of determining her residuary estate. The contention of the Collector of Internal Revenue, that the residuary estate is only that part of the estate of testatrix which remains after the payment of all of the Federal taxes, administrative expenses, and all charges of any kind, including bequests and devises in other provisions of the will, is not a correct interpretation of testatrix's intent. We believe the executors have properly construed testatrix's intent as contained in the precise and unambiguous language of her will.

In the petition for proration the executors have pointed out the sizeableness of this estate and the devises and bequests therein, as well as the hardship that will result due to the fact that the difficulty over the assessment of the tax may be prolonged for an extended period of time, during which the executors can make no distribution of testatrix's estate. We recognize the validity of this contention. We are powerless, however, to be of any assistance.

The practical problem which confronts us, and which we believe is insurmountable and therefore prevents us from prorating the taxes in this estate, results from the fact that the Proration Act imposes the burden of the tax on those persons whose shares in testatrix's estate, passing either under the provisions of her will or outside of her will by reason of her death, contribute to the burden of the tax. We cannot determine the value of the shares of the beneficiaries in testatrix's total estate which contribute to the tax burden, or the ratio of their contribution to the tax burden, until the tax has been finally paid. The difficulty in proration which we face under the facts of this case as they now exist is demonstrated by the problem of whether or not the gifts to charity are taxable. Although Harvey's Estate, 350 Pa. 53, has stated as a general proposition that all charitable bequests are free from taxation for Federal estate tax purposes, and therefore would not under the principle of equity which control the Proration Act have imposed on them any part of the tax, this proposition of law goes no further than the facts in that particular case. If in the final assessment of this tax charitable bequests contribute to the tax burden they must bear their share of the burden in accordance with the equitable principles specifically stated in the act establishing proration. It is impossible at this time, because of the fact that the assessment has not been finally made, to determine if the charitable bequests contribute to the burden of taxation. It follows, therefore, it is an impossibility to prorate the tax presently paid.

The problem involved in this case is very similar to that in Cardeza's Estate, 51 D. & C. 461, in which case Hunter, J., writing for the court, said:

"The deficiency tax is based not only upon the personal and real estate of the decedent passing under

her will, but as well upon gifts made in her lifetime and property subject to her power of appointment.

"The tax has not been paid, except in part, and it is in litigation before the Tax Court of the United States.

"We are aware of the hardship to petitioner who has waited five years since the death of decedent for the payment of his legacy. We are confronted, however, with the complexities of Federal tax laws and practice, and it may be difficult if not impossible to make an order which would result in the immediate payment of the legacy.

"The deficiency tax may be materially reduced or even set aside, and to compel payments under a temporary apportionment would require refunds upon any change of figures. Under section 800 of the Internal Revenue Code, 26 U. S. C., the primary liability for Federal estate tax is imposed upon the estate of the decedent, and the executors are personally liable to the full extent of the assets which come into their possession. The code also provides that the tax shall be a lien upon all property subject to the tax, and the Federal laws are paramount to any order which we might make against such property."

In Lucey Estate, 63 D. & C. 645, Ladner, J., writing for the court en banc followed Cardeza's Estate, supra, and said:

"We cannot, however, make any order of proration in this case because the deficiency tax assessed has not actually been paid and payment is an indispensable prerequisite under the plain language of the Proration Act of 1937, supra, if not of the jurisdiction of this court: Cardeza's Estate, 51 D. & C. 461 (1944)."

We believe the well-considered reasoning of the court in the above-cited cases demonstrates the inability of the court to make an order of proration at this time. The petition for proration will, therefore, be dismissed, with leave reserved to petitioners to present it

when the controversy between the Commissioner of Internal Revenue and the executors of the estate has been settled and we are in position to ascertain the value of the interests of the respective beneficiaries in the estate.

*Decree*

And now, to wit, March 10, 1949, upon consideration of the foregoing case, and for the reasons set forth in the opinion filed herewith, it is ordered, adjudged and decreed that the prayer of the petition be refused and the petition is dismissed at the costs of petitioners, without prejudice.